**Boyce T. McCALL, Sr., Plaintiff–Appellee,**

**v.**

**Ted OWENS and Ted Douglas Owens d/b/a Ted's Chevron and Ron Beverly, and Ted Owens and Ted Douglas Owens d/b/a Ted's Chevron as co-partners associated and in business with East Tennessee Auto Recovery Corporation as a partnership, Defendants–Appellants.**

**Boyce T. McCALL, Sr., Plaintiff–Appellee,**

**v.**

**FIRST TENNESSEE BANK and East Tennessee Auto Recovery Corporation, et al., Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

May 9, 1991.

Rehearing Denied June 5, 1991.

Permission to Appeal Denied by Supreme Court Dec. 2, 1991.

William N. Groover, for Ron Beverly and East Tennessee Auto Recovery Corp., defendants-appellants; Janet Hogan, Knoxville, of counsel.

Boyd W. Venable, III and Alan L. Spear, Knoxville, for First Tennessee Bank, defendant-appellant.

John F. Weaver and C. Mark Troutman, McCord, Weaver & Troutman, P.C., Knoxville, for plaintiff-appellee.

OPINION

FRANKS, Judge.

In these cases consolidated for trial, defendants First Tennessee Bank, Ron Beverly and East Tennessee Auto Recovery Corporation have appealed jury verdicts for compensatory and punitive damages rendered in favor of the plaintiff. We reverse the trial court judgments on the basis of inconsistent verdicts as to liability and damages.

Plaintiff purchased a 1979 Ford Pinto from Garner Sams Ford on May 21, 1979 and financed the purchase through a loan from the United American Bank. The installment sales contract provided in part:

> *INSURANCE:* Obligor shall purchase and maintain fire, theft, collision, and comprehensive insurance for the term of this contract, protecting the interests of Obligor and Holder in the property. Should Obligor fail to provide such coverage, Holder may, but is not obligated to, obtain such hazard insurance. Obligor shall then pay forthwith to Holder any premium necessary for such insurance, and, until full payment, the amount of said unpaid premium shall constitute an additional part of the obligation to be paid under and secured by this contract. Should Holder be unable to place such insurance or should initial insurance expire or be cancelled for any reason, Obligor shall immediately provide coverage by a carrier satisfactory to Holder.

The agreement also states the obligor's failure to keep the collateral insured would constitute a default on the note.

McCall decided to self-insure the vehicle and when the bank learned that the Pinto was not insured the bank purchased insurance from Southern Fire Insurance to protect its collateral. The premium was then charged to McCall, which he refused to pay. The note was eventually assigned to First Tennessee Bank which also attempted to collect from McCall.

The payments on the loan were paid in full by May of 1983 and, in June 1983, the bank demanded payment of the premium which totalled some $370.00. McCall again refused to pay. The bank then hired East Tennessee Auto Recovery and its employee, Ron Beverly, to repossess the Pinto. Ted Owens and his son, Ted Douglas Owens, operated Ted's Chevron Service Station and owned the wrecker utilized by Beverly in repossessing the vehicle. The bank's letter to Beverly authorizing the repossession, in part states:

> We agree to indemnify and save you harmless from and all claims, damages, losses and action resulting from or arising out of the efforts to collect the above claim; except, however, such as may be caused by or arising out of the negligence or unauthorized acts of your agencies, its officers, employees or agents or the officers or employees of such agents.

McCall and his wife testified they heard someone "stealing their car" on the night of November 11, 1983. As the wife phoned the police, McCall dressed and ran out to confront Beverly and at least one other man. McCall testified that in defendants' haste to tow the car from his property the wrecker ran over his foot and knocked him to the ground. McCall was given first aid by his wife, a registered nurse, and ob-

tained medical treatment for his injuries. Subsequently, McCall located the Pinto stored at Ted's Chevron and, when he tried to retrieve the vehicle, was dissuaded by a man who "flashed" a gun. On advice of counsel, McCall paid the disputed premium under protest and regained possession of his vehicle on November 18. He claimed that several small items of personal property had been taken from the vehicle and charged that the bank's report to a credit bureau about the repossession defamed him.

As a result, McCall filed two lawsuits. One against First Tennessee Bank and East Tennessee Auto Recovery jointly and severally for torts incident to wrongful repossession, trespass to realty, chattel conversion, assault and battery, outrageous conduct and defamation. The other incorporated the first complaint and claimed that Ted's Chevron, East Tennessee Auto Recovery and Ron Beverly aided in the commission of these torts as a partnership.

After trial before a jury, verdicts were rendered. In the first case, First Tennessee Bank was held liable for $49,000.00 in compensatory damages and $196,000.00 in punitive damages. East Tennessee Auto Recovery Corporation was found to be liable for $21,000.00 in compensatory and $84,000.00 in punitive damages. In the consolidated cause of action, Ted Owens was exonerated, Ted D. Owens was found liable for $9,000.00 in compensatory damages and $21,000.00 in punitive damages. Ted's Chevron was exonerated and Ron Beverly was held liable for $36,000.00 in compensatory damages and $84,000.00 in punitive damages. The alleged partnership was exonerated.

The trial judge overruled a motion for a new trial except Ted D. Owens was granted a new trial. He also ruled the bank must indemnify East Tennessee Auto Recovery for its torts but need not indemnify its president, Ron Beverly.

The bank under its agreement with McCall had the right to repossess the Pinto as a matter of law. Tenn.Code Ann. § 47-9-503 gives a secured party the right to take possession of a collateral "on default". A failure to insure collateral is considered a default for which repossession is a proper remedy. *See e.g., Ash v. Peoples Bank of Greensboro,* 500 So.2d 5 (Ala. 1986); *Johnston v. Stinson,* 418 So.2d 805 (Miss.1982); *Eglin Federal Credit Union v. Curfman,* 386 So.2d 860 (Fla.App.1980); *Wagner v. Ford Motor Credit Co.,* 155 Ga.App. 729, 272 S.E.2d 500 (1980); However, there is material evidence to support McCall's assertion that the manner in which the repossession was carried out was a breach of the peace. Tenn.Code Ann. § 47-9-503 gives a secured party the option of the self-help remedy of repossession "if this can be done without breach of the peace". Conversely, if the repossession may breach the peace, the creditor should resort to the judicial process or risk liability for tortious conduct. *See generally* 69 Am.Jur.2d *Secured Transactions* § 593-597. Under the *Uniform Commercial Code* a "breach of peace" must involve some violence or threat of violence. *Harris Truck & Trailer Sales v. Foote,* 58 Tenn.App. 710, 436 S.W.2d 460 (1968). The testimony of McCall and his wife and his doctor provided adequate material evidence that the repossession entailed actual violence and the trier of fact could conclude the taking was unauthorized under the Code.

Whether First Tennessee Bank would be liable for East Tennessee Auto Recovery's actions was also for the trier of fact. First Tennessee hired East Tennessee Auto Recovery through its president, Ron Beverly, to repossess the vehicle. The bank asserts it was not liable for Beverly's torts because it disclaimed liability and Beverly was an independent contractor not engaged in ultra-hazardous activity. Neither argument is persuasive. A close reading of First Tennessee's alleged promise and disclaimer shows it to be ineffectual. First Tennessee promises to indemnify East Tennessee Auto Recovery and Beverly for "everything" except negligence or "unauthorized acts", presumably of the nature that would give rise to a lawsuit in the first instance. Moreover, courts have generally held that a secured party is vicari-

ously liable for wrongful acts of the repossessor even if the repossessor is an independent contractor. The duty not to breach the peace is non-delegable. *See General Finance Corp. v. Smith,* 505 So.2d 1045 (Ala.1987); *Nichols v. Metropolitan Bank,* 435 N.W.2d 637 (Minn.App. 1989); *Sanchez v. MBank of El Paso,* 792 S.W.2d 530 (Tex.App.1990).

When the repossessor uses force and breaches the peace, the repossessor may be liable for trespass, conversion, assault and battery and other torts. *See* 69 Am.Jur.2d *Secured Transactions* §§ 591, 596. Compensatory and punitive damages are recoverable. *See Lawrence v. Stanford,* 655 S.W.2d 927 (Tenn.1983). *Also see generally* Annot., 87 A.L.R.3d 201 (1978).

There is material evidence that Tennessee Auto Recovery came on to McCall's property without permission, took the Pinto and its contents violently and drove over McCall, knocking him down. There is further evidence that McCall required prompt medical attention, 6 to 8 weeks of bed rest, experienced pain and suffering and some disability and embarrassment. The evidence established jury issues on trespass, assault, conversion, outrageous conduct, agency and punitive damages but, since First Tennessee Bank had the right to repossess the vehicle, the credit report made the day before the repossession is merely a statement of truth and was not defamatory. Accordingly, it was error for the trial judge to charge the jury on defamation. *See* 75 Am.Jur.2d *Trespass* §§ 5 and 10; *Rushing v. State,* 196 Tenn. 515, 268 S.W.2d 563 (1954); Annot., 87 A.L.R.3d 201 (1978).

The jury verdicts, however, are so inconsistent that a remand for a new trial is necessary. A verdict is inconsistent when a jury on a single set of facts and circumstances reaches differing conclusions of fact and law. *See Milliken v. Smith,* 218 Tenn. 665, 405 S.W.2d 475 (1966). Accordingly, an inconsistent verdict is a nullity. *Slaten v. Earl Campbell Clinic,* 565 S.W.2d 483 (Tenn.1978). Hence, in consolidated cases, when the two actions are thus tried together and inconsistent verdicts are rendered ... sound practice requires both verdicts to be set aside at once, without attempting, by analysis of the evidence or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found.

. . . . .

Ordinarily, when there is an inconsistent verdict, the appropriate procedure is to set it aside and order a new trial. *Id.*, at 484.

The verdicts are inconsistent because East Tennessee Auto Recovery was held liable and was exonerated on the same fact pattern. *See* in this connection, *Milliken.* Similarly, the jury also awarded both compensatory and punitive damages against Beverly in the case wherein it exonerated his corporation. When inconsistent verdicts are rendered in a master and servant or similar cases, neither the verdict in favor of the employee nor the verdict against the employer is permitted to stand. *See Slaten.*

The verdicts must be also reversed because the jury expressly apportioned compensatory damages. Tennessee courts have long held that to apportion fault by dividing damages among joint tort feasors is erroneous. In *Nashville C & St.L.Ry. v. Jones,* 100 Tenn. 512, 45 S.W. 681 (1898), our Supreme Court explained:

> The general rule, established by an unbroken line of authority, is, that when a plaintiff sues all joint tortfeasors, or any number less than all, for an injury, he is entitled to a verdict for full compensation, against all the defendants, when he succeeds in convicting them of the wrong, without regard to the degree of guilt of each defendant. So far as he is concerned, each joint tortfeasor is bound to compensate him for the full injury sustained, whatever may be the grade of the offense as between themselves. As in the case of a misdemeanor committed by a number of persons, all are principals, so all persons who contribute to the plaintiff's injury are liable to make good

his whole loss, whatever may be the grades of their offense, as between themselves. In the case of a joint wrong the question is, "Are the defendants guilty or not guilty, and, if guilty, what will compensate the plaintiff for his injury?"

Mr. Addison, in his work on Torts, says: "We have already seen that where several persons commit a trespass in pursuit of one common design, each is answerable for the aggregate damage done by all. The jury cannot regularly assess several damages for one trespass, with which the defendants are jointly charged, for, though in fact one was more malicious and did greater wrong that the other, yet, all coming to do an unlawful act, the act of one is the act of all the parties present, and it is a rule of law that what the plaintiff hath laid joint in his declaration the jury cannot sever. Whenever, therefore, two or more persons are charged with a joint trespass, and both or all are found guilty, the jury cannot afterwards assess several damages. The damages must be assessed against all jointly, although all may not be equally culpable." 2 Add. on Torts, Sec. 1395.

The rationale for the rule is that the injured plaintiff should be made whole by the joint tortfeasors. This rule has also been applied in *Morris v. Ostertag,* 52 Tenn.App. 561, 376 S.W.2d 720 (1963) and *Donegan v. Beasley,* 27 Tenn.App. 369, 181 S.W.2d 379 (1944).

By contrast, a jury may award punitive damages against some joint tortfeasors and not against others. *See Huckeby v. Spangler,* 563 S.W.2d 555 (Tenn.1978). In these cases, the jury apportioned compensatory damages, *i.e.,* an award was made against First Tennessee in amount of $49,000.00 and East Tennessee Auto Recovery in amount of $21,000.00, and in the consolidated case against Beverly in the amount of $36,000.00 with no award against East Tennessee Auto Recovery.

Accordingly, the judgments are vacated and new trials granted consistent with this opinion, with cost of appeal assessed one-half to the defendants and one-half to the plaintiff.

SANDERS, P.J. (E.S.), and WILLIAM H. INMAN, Special Judge, concur.