**MASSACHUSETTS BAY INS. CO., Plaintiff–Appellee,**

v.

**VIC KOENIG LEASING, INC., Defendant–Appellant.**

No. 96–2831.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1997.

Decided Feb. 9, 1998.

Russell F. Watters, John P. Cunningham, Paul J. Schulte (argued), Brown & James, St. Louis, MO, for Plaintiff–Appellee.

Jeffrey A. Wilhite (argued), William J. Schenck, Wilhite and Associates, Evansville, IN, for Defendant–Appellant.

Before COFFEY, MANION, and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellee, Massachusetts Bay Insurance Company ("Massachusetts Bay"), sought a declaratory judgment in federal district court that it maintained no duty to defend its insured, the defendant-appellant, Vic Koenig Leasing, Inc. ("Koenig"), in an action arising out of Koenig's alleged wrongful repossession of an automobile from Film House, Inc. ("Film House"). Both parties filed motions for summary judgment, whereupon the court entered summary judgment in Massachusetts Bay's favor. Koenig appeals that determination.[1] We affirm.

## I. BACKGROUND

Koenig is an enterprise engaged in the business of leasing automobiles, and from December 31, 1988, to December 31, 1989, had its liability insurance coverage placed with Massachusetts Bay. On June 6, 1985, Koenig executed a lease agreement with Film House, a corporation located in Nash-ville, Tennessee, on a 1983 BMW 733–I automobile for use by Film House's president and sole owner, Curt Hahn ("Hahn"). The terms of the contract expressly provided that monthly payments were to be made over a four year period of time, as well as gave Film House the option to purchase the vehicle for $2,000 once the lease term expired.

In early May, 1989, just one month before the lease was to terminate, Film House informed Koenig that it intended to exercise the $2,000 automobile purchase option set forth in their agreement. Koenig, however, notified Film House that "the price for such option should have been $6,000, that there had been a[sic] unilateral mistake and requested that [Film House] consider this information and pay [it] the sum of $6,000 for the vehicle." The parties continued to dispute the automobile's purchase option price through December of 1989, at which time Koenig retained American Lenders Service Co. ("American Lenders") to repossess the vehicle. Two American Lenders agents went to Film House's parking lot in Nashville and proceeded to attach a tow truck hitch to the BMW. Hahn, having learned of what was transpiring, appeared and attempted to thwart their efforts. A crowd gathered and a heated argument ensued, during which the agents advised Hahn that Koenig had hired them to retrieve the automobile and that "they were going to take [it] one way or another." Being unable to stop American Lenders, Hahn surrendered the vehicle out of fear that any further confrontation might result in damage to it.

On March 9, 1990, Film House filed suit against Koenig in the Circuit Court for Davidson County, Tennessee, *Film House, Inc. v. Vic Koenig Leasing, Inc.*, No. 90C–388, alleging that Koenig "committed the tort of conversion . . . through a positive act of seizure of the BMW automobile." Koenig demanded that Massachusetts Bay, as its insurer, defend it in the action. In response thereto, Massachusetts Bay examined the

---

1. This is the second time that this appeal has been presented to us. We previously dismissed this appeal in *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, No. 96–1383, slip op. (7th Cir. May 21, 1996), for lack of jurisdiction because the district court's judgment had not "resolved defendant Vic Koenig Leasing's counterclaim," and therefore, the appeal was still pending.

factual allegations in Film House's complaint and compared them with the express language of Koenig's insurance policy, only to eventually conclude and notify Koenig, in a letter dated March 14, 1991, that it "regretfully den[ied] coverage for the [Film House] lawsuit based upon the allegations as they are plead" because: (1) it was the insurer's "opinion that the alleged conversion would be deemed an intentional act and therefore [did] not meet the definition of 'accident' in the policy"; and (2) the policy's "[expected or intended injury] exclusion would tend to exclude coverage for the lawsuit at hand." The provisions to which Massachusetts Bay was referring read, in relevant part:

A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations."

* * * * * *

B. EXCLUSIONS

This insurance does not apply to any of the following:

1. EXPECTED OR INTENDED INJURY

"Bodily injury" or "property damage" *expected or intended from the standpoint of the "insured."* But for "garage operations" other than covered "autos" this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(R. 1, Ex. A, Garage Coverage Form, at 2–3 (emphasis added)).

The Film House suit eventually went to trial and, on January 2, 1995, Koenig, by and through its counsel, made a claim in the amount of $85,096.52 for attorney's fees and costs incurred in the course of defending the action. Massachusetts Bay filed a motion for a declaratory judgment, alleging that, under the plain language of the policy, it did not maintain a duty to defend Koenig, and therefore was not obligated to pay such costs and attorney's fees. Both parties subsequently filed motions for summary judgment. Koenig also made a motion for a hearing on the motions. In an order dated January 19, 1996, the district court denied Koenig's motion for a hearing on the motions and entered summary judgment in Massachusetts Bay's favor, declaring that "the Massachusetts Bay Insurance Company did not have a duty to defend Vic Koenig Leasing, Inc., in the action *Film House, Inc. v. Vic Koenig Leasing, Inc.; et al.*" In so doing, the court found that the Film House complaint failed to set forth facts coming within the parameters of the term "accident," as defined under Illinois law, since it alleged that Koenig engaged solely in deliberate behavior; namely, the wrongful repossession of the BMW automobile.

## II. ISSUES

On appeal, Koenig does not take issue with the court's conclusion that its repossession was not an "accident." Rather, it asserts that the complaint could be read to allege facts giving rise to causes of action for slander, wrongful entry, invasion of privacy, theft, breach of an insured contract and safekeeping—claims for which its policy does provide coverage—and as such, Massachusetts Bay had a duty to defend it in the Film House suit. Massachusetts Bay, on the other hand, continues to maintain that coverage for Koenig's repossession of the BMW is precluded to the extent that: (1) an intentional act (i.e., repossession) cannot not reasonably be construed as an "accident"; and (2) the policy contains an express exclusion for damages caused by "expected or intended" injuries to property.

## III. DISCUSSION

As previously noted, this case comes to us on a grant of summary judgment, and it is a well-established principle of this Circuit that "[w]e review the district court's decision to grant summary judgment *de novo*, accepting all facts and inferences in a light most favorable to [Koenig] as the non-moving party." *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir.1997). Summary judgment is appropriate whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Moreover, insofar as interpretations of insurance contracts are questions of law, we likewise review such issues *de novo. Equitable Life Assurance Soc. of U.S. v. Bell,* 27 F.3d 1274, 1277 (7th Cir.1994).

## A. *Choice of Law*

 Before considering the merits of the parties' various arguments, we think it prudent to deal with a question which, although neither Massachusetts Bay nor Koenig directly address it in their respective briefs, is clearly an important issue before us—whether Tennessee or Illinois law governs this dispute. The district court opined that it needed not conduct a thorough, substantive choice-of-law analysis, as the litigants "seemingly" agreed that Illinois law applied:

> The first question that must be answered is what law to apply to this case. The conflict of law rules applied by a federal court are those of the state in which the federal court sits. However, a federal court should apply the law of the forum state where the parties have not identified a conflict between two bodies of state law which might apply to their case. *Here, the parties have not identified a conflict and are seemingly in agreement that Illinois law applies. Therefore, the Court will apply Illinois law in resolving this case.*

(R. 30, Mem. and Order of Jan. 19, 1996, at 4 (emphasis added)). It is true, as the trial judge recognized, that "[t]he operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.... *Courts do not*

*worry about conflict of laws unless the parties disagree on which state's law applies." Wood v. Mid–Valley, Inc.,* 942 F.2d 425, 426–27 (7th Cir.1991) (emphasis added). We do not quarrel with this proposition, nor do we by any means advocate its abandonment. After all, ours is an adversary system in which it is the exceptional circumstance that a federal court, or any court for that matter, will not honor a choice of law stipulation. *Id.* It would be a foolish expenditure of judicial resources to do so. *But here, the fact of the matter is that Massachusetts Bay and Koenig have "disagreed on which state's law applies" at every stage of litigation, including on appeal to this Court.*

As noted above in Part I, after Massachusetts Bay sought a declaratory judgment in the district court, the parties filed cross-motions for summary judgment. Only Massachusetts Bay briefed the conflicts issue, and it concluded, albeit confusingly, that Illinois substantive law governed under Illinois "choice-of-law" principles.[2] Koenig, on the other hand, cited almost exclusively to Tennessee case law to support its position that the Film House complaint alleged facts which fell within the disputed policy's coverage. As such, it assumed, without arguing against the application of Illinois law, that Tennessee law governed the parties' dispute. In its "Memorandum of Law in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment," Koenig wrote:

> Under the law of Tennessee, when a repossession breaches the peace as Film House alleged in its Complaint, the repossessor may be liable for trespass. *McCall v. Owens,* 820 S.W.2d 748, 752 (Tenn.App.1991). Under the law of Tennessee, damage to reputation is recoverable under the tort of conversion. *Lance Productions, Inc. v. Commerce Union Bank,* 764 S.W.2d 207, 213 (Tenn.App.1988).

> \*　　\*　.　\*　　\*　　\*　　\*

**2.** We characterize Massachusetts Bay's conflicts-of-law analysis as confusing because the insurer repeatedly referenced the rule that "the location of the insured risk is given special emphasis" under Illinois choice-of-law principles, but never applied this legal axiom to the facts of this case. Had Massachusetts Bay done so, it would have discovered that the insured risk (i.e., the BMW

automobile) was, in fact, located in Tennessee, and that Tennessee law applied. Instead, it was apparently predisposed to concluding that Illinois substantive law governed this dispute, and chose to ignore the "location of the insured risk" choice-of-law rule which it so steadfastly urged the district court to follow.

The ultimate issue was whether Koenig has a right to take the vehicle. The very premise of a conversion action in Tennessee is "ownership" of the personal property. Tennessee Pattern Instruction No. 8.90; *Breedon v. Elliott Brothers*, 173 Tenn. 382, 118 S.W.2d 219 (1938).

The lone "non-Tennessee" authority that Koenig referenced in its Reply Memorandum was one from this Court, *Red Ball Leasing, Inc. v. Hartford Accident and Indemnity Co.*, 915 F.2d 306 (7th Cir.1990).

The foregoing discrepancies between Massachusetts Bay's and Koenig's summary judgment memoranda should have prompted the district judge to countenance the possibility that the parties disagreed on whether Tennessee or Illinois law was to apply. In *Property Owners Ins. Co. v. Cope*, 772 F.Supp. 1096 (N.D.Ind.1991), for example, the court faced a situation in which neither the plaintiff nor defendant expressly stipulated that the law of Indiana governed their dispute, but it implied that such was the case:

> The plaintiff argues persuasively that Indiana law controls this action on the insurance contract. The defendants do not address choice of law, but their brief relies on Indiana law. *In these circumstance [sic], finding no plain error in the parties' choice of law, the court will not delve into or upset their assumption.*

*Id.* at 1099 (emphasis added) (citing *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 299 (7th Cir.1985) (per curiam)). The following excerpt from *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 1994 WL 529370 (N.D.Ill. Sept. 27, 1994), suggests that the converse also holds true–a court will intervene where, as here, one party argues that one state's law governs, and the other fails to address the choice-of-law issue, but relies on another state's law in its brief:

> *GATX* argues that *Wood v. Mid–Valley, Inc.*, 942 F.2d 425 (7th Cir.1991) *prevents this Court from applying any law other than Illinois's in this case. This Court*

*disagrees.* In *Wood*, the Seventh Circuit considered the validity of choice of law clauses in contracts and parties' stipulations that a certain state's law would govern the substance of the case. Neither is the case here. The Seventh Circuit stated, "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the court sits." *It is undisputed that Defendant addressed the choice of law issue in its supporting memorandum to its motion for judgment. Furthermore, both parties cited caselaw from Texas, Illinois and other states as well. The Court found it necessary to determine the choice of law issue to resolve this case. GATX had ample opportunity to respond to Defendant's choice of law arguments, but it did not. GATX's claim that this Court should have interpreted GATX's failure to respond as a type of stipulation that Illinois substantive law would apply is unreasonable.*[3]

*Id.* at *1 (emphasis added). How, then, could it be said that the parties were in agreement that Illinois law controlled, and that *Wood*'s rule was applicable? We are bound to consider the record only, and our review makes clear that there exists not a shred of evidence suggesting that Massachusetts Bay and Koenig in fact agreed, "seemingly" agreed, or even remotely agreed that Illinois law applied when they presented their respective motions for summary judgment to the district court. The trial judge, like his counterpart in *GATX Leasing Corp.*, should have considered the parties' disagreement and conducted a choice-of-law analysis in accordance therewith.

On appeal, neither Massachusetts Bay nor Koenig sets forth an argument as to why the district judge's choice-of-law determination might have been in error. Once again, however, Koenig implores us to consider Tennessee case law when construing

---

**3.** On appeal, this Court affirmed the district court's judgment on the pleadings in National Union's favor. *See GATX Leasing v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112 (7th Cir.1995). Our esteemed colleague, Judge Ripple, likewise found the Wood case, discussed *supra* p. 1120, inappo-

site, and noted that GATX's failure to address National Union's choice-of-law argument during trial could be considered a waiver, but nevertheless engaged in a lengthy conflicts analysis. *Id.* at 1115 n. 6.

the insurance policy and Film House complaint.[4] "Under the law of Tennessee," it urges, "when a repossession breaches the peace as Film House alleged in its Complaint, the repossessor may be liable for trespass. *McCall v. Owens*, 820 S.W.2d 748, 752 (Tenn.App.1991). Because Film House alleges trespass, which could potentially be covered under the wrongful entry provision, Insurer has a duty to defend." In short, Massachusetts Bay and Koenig continue to disagree on which state's law applies herein, and the choice-of-law issue still looms.

■■■ Of course, "we have *no obligation* to consider an issue," like the one before us, "that is merely raised, but not developed, in a party's brief." *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Board*, 957 F.2d 302, 304 (7th Cir.1992) (emphasis added). But having "no obligation" to do something must be distinguished from having "no right" to do it. "Although it is true that we normally refuse to consider arguments not presented, it is within our discretion to consider such arguments when to do so is in the interests of justice." *United States v. Leichtnam*, 948 F.2d 370, 383 (7th Cir.1991) (Coffey, J., concurring) (citations omitted). In many instances, a court's choice-of-law analysis is outcome determinative. *See, e.g., Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 (7th Cir. 1996) (explaining that "the choice-of-law analysis had crucial importance" because of discrepancies between Illinois and California law regarding corporate successor liability). While such may not be the case before us today,[5] we clearly think it is in the interest of justice to insure that district courts conduct choice-of-law analyses when conflicts questions are presented to them. *Nonetheless, we must make abundantly clear to future litigants that this case does not stand for the proposition that a choice-of-law issue will always be preserved for appellate review if or whenever the parties to a given lawsuit cite authorities from different jurisdictions. Rather, our holding is limited to the unique facts and circumstances surrounding this particular litigation.*

■■■ That having been said, we shall set forth our own choice-of-law analysis. "A federal court sitting in diversity looks to the conflict-of-laws rules in the state jurisdiction in which it sits in order to choose the substantive law applicable to the case." *GATX Leasing Corp.*, 64 F.3d at 1114 (citations omitted). Here, that forum is Illinois, and the courts of that State "appl[y] the 'most significant contacts' analysis in determining which forum's law govern[s] the interpretation of a comprehensive insurance policy." *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 268 Ill.App.3d 655, 205 Ill.Dec. 673, 679, 643 N.E.2d 1280, 1286 (1994). Under Illinois' "most significant contacts" test:

> "[I]nsurance contract provisions may be governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a relationship to the general contract." *While all these factors must be considered in the choice of law analysis, the location of the insured risk is given special emphasis.... [T]he "location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally in a single state."*

*Id.* at 680, 643 N.E.2d at 1287 (citations omitted) (emphasis added). *In this case, the single-most important factor, the insured risk—the BMW automobile—was located and repossessed in Nashville, Tennessee.* The plaintiff in the underlying conversion action, Film House, a Tennessee resident, brought suit in a Tennessee state court. We believe that these are significant enough contacts to justify the application of Tennessee substantive law under Illinois conflict-of-law

---

4. Koenig also makes limited reference to two Illinois cases in its twelve-page appellate brief.

5. In the end, the result we reach today will unlikely be affected by our application of Tennes-

see, rather than Illinois, law, for the ways in which the two jurisdictions approach an insurer's duty to defend are remarkably similar.

principles. Indeed, in *Society of Mount Carmel,* the Illinois Court of Appeals was called upon to choose between employing Illinois or California law,[6] and concluded that:

> California law governs the interpretation of the policies in question. Although these policies were executed in Illinois, all other significant factors favor the application of California law. *Most importantly, the insured risk involved in this instance ... was located in California. Moreover, the underlying action was brought in a California court* against defendants who were predominantly domiciled in California.

*Id.* (emphasis added) (citations omitted). We are faced with a similar set of circumstances, save for perhaps the fact that Massachusetts Bay is not domiciled in Tennessee, which, in our view, is an inconsequential detail insufficient to warrant the application of Illinois law. For these reasons, we hold that Tennessee law governs Koenig's appeal, and shall proceed with our discussion, accordingly.[7]

### B. *Massachusetts Bay's Duty to Defend Under Tennessee Law*

■ "We begin our analysis with the general rule that an insurer's duty to defend a suit against its insured is determined according to the factual allegations of the complaint." *I. Appel Corp. v. St. Paul Fire & Marine Ins. Co., Inc.,* 930 S.W.2d 550, 552 (Tenn.App.1991) (citations omitted) (emphasis added). "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, ... the insurer is obligated to defend if there is, potentially, a case under the complaint within the

**6.** The appellee, National Ben Franklin Insurance Co. of Illinois, urged that California law applied because the events giving rise to coverage under an insurance policy it issued to the appellant, Society of Mount Carmel, occurred in California, the insured risk was located in California, and the underlying litigation was filed in a California court. *Society of Mount Carmel,* 205 Ill.Dec. at 679, 643 N.E.2d at 1286. Society of Mount Carmel, on the other hand, argued that choice-of-law depended on the place of contract execution, and thus asserted that Illinois law governed their dispute. *Id.*

**7.** Not only are we of the opinion that Illinois choice-of-law principles mandate that we apply Tennessee substantive law to determine whether

coverage of the policy." *Dempster Bros., Inc. v. United States Fidelity & Guar. Co.,* 54 Tenn.App. 65, 388 S.W.2d 153, 156 (Tenn. App.1964). This is but an adaptation of the principle that contracts of insurance which are ambiguous and susceptible to two reasonable meanings should be construed in the insured's favor. *See Boyd v. Peoples Protective Life Ins. Co.,* 208 Tenn. 280, 345 S.W.2d 869, 872 (1961). Moreover, "[i]f even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chemical Co. v. Bituminous Ins.,* 933 S.W.2d 471, 480 (Tenn.Ct.App.1996) (citing *U.S. Fidelity & Guar. Co. v. Murray Ohio Manuf. Co.,* 693 F.Supp. 617 (M.D.Tenn.1988)).

### 1. *Conversion Alleged in Film House Complaint was not an "Accident"*

■ Initially, we address Massachusetts Bay's argument that, because the insurance policy at issue limits coverage to property damage caused by an "accident," it could not have been obligated with a duty to defend in the Film House action since Koenig's repossession of the BMW automobile cannot be characterized as an "accident." The applicable section of Koenig's policy reads, in pertinent part:

### A. COVERAGE

> We [Massachusetts Bay] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations."

Film House's complaint alleged facts which might invoke Massachusetts Bay's duty to defend under the policy, but it would be illogical to arrive at any other conclusion. In other words, Koenig argues that the complaint sets forth facts that allege, *inter alia,* slander. Why, then, would one apply Illinois "slander" law to the complaint when it was filed in a Tennessee court and the case was presumptively litigated vis-a-vis Tennessee law? After all, Massachusetts Bay would not have had a duty to defend Koenig in the Film House action if the complaint failed to articulate facts that made out a claim for slander under Tennessee law, but did so under the law of Illinois.

(R. 1, Ex. A, Garage Coverage Form, at 2). Although the policy fails to define "accident," we note that the district court turned to and applied Illinois law to interpret this term, to wit:

> Several Illinois cases define "accident" as "an unforeseen occurrence, usually of an untoward or disastrous character, or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Farmers Elevator Mut. Ins. Co. v. Burch,* 38 Ill.App.2d 249, 187 N.E.2d 12, 14 (Ill. App. 4th Dist.1962); *see also Diamond State Ins. Co. v. Chester–Jensen Co.,* 243 Ill.App.3d 471, 183 Ill.Dec. 435, 443, 611 N.E.2d 1083, 1091 (Ill.App. 1st Dist.1993) ("An accident, by its very nature contemplates an event that is unforeseen and neither intended or expected."); *Travelers Ins. Cos. v. P.C. Quote, Inc.,* 211 Ill.App.3d 719, 156 Ill.Dec. 138, 143, 570 N.E.2d 614, 619 (Ill.App. 1st Dist.1991) ("An accident is defined as 'an unforeseen occurrence of untoward or disastrous character' or 'an undesigned or sudden or unexpected event.'"); *Aetna Casualty & Sur. Co. v. Freyer,* 89 Ill.App.3d 617, 44 Ill.Dec. 791, 793, 411 N.E.2d 1157, 1159 (Ill.App. 1st Dist.1980) (same). As a result, these cases have held that the natural and ordinary consequences of an act do not constitute an accident. *P.C. Quote,* 156 Ill.Dec. at 144, 570 N.E.2d at 619; *Freyer,* 44 Ill.Dec. at 793, 411 N.E.2d at 1159; *Burch,* 187 N.E.2d at 14.

(R. 30, Mem. and Order of Jan. 19, 1996, at 6). Tennessee's definition of the term "accident" seems to be cut from the same cloth. That is, in *Kroger Co. v. Johnson,* 221 Tenn. 649, 651, 430 S.W.2d 130, 131 (1967), the Supreme Court of Tennessee explained that "the words 'accident' and 'accidental' ... imply that the injury must partake of the unusual, casual or fortuitous." *Id.; see also American Employers Ins. Co. v. Knox–Tenn Equip. Co.,* 52 Tenn.App. 643, 377 S.W.2d 573, 576 (1963) (citations and quotations omitted) ("An accident as defined ... in our decisions defining accidental means as those words are used in insurance policies is an event not reasonably to be foreseen, unexpected, and fortuitous."). "[T]here is an element of sudden, unforeseen and unexpected

casualty and misfortune in the result." *Kroger Co.,* 221 Tenn. at 652, 430 S.W.2d at 132. Thus, Tennessee courts, like those of Illinois, recognize that the "the natural results of what [one] intend[s] to do," *id.* at 654–55, 430 S.W.2d at 132–33, do not flow from accidents.

It is beyond dispute that Koenig's conversion of the car was an intentional act not falling within the meaning ascribed the term "accident"; namely, an event that is unforeseen and neither intended nor expected. Indeed, "[t]o be liable [for conversion], *the defendant need only have an intent* to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights." *Mammoth Cave Prod. Credit Ass'n v. L.H. Oldham,* 569 S.W.2d 833, 836 (Tenn. Ct.App.1977) (emphasis added); *see also General Electric Credit Corp. of Tennessee v. Kelly & Dearing Aviation,* 765 S.W.2d 750, 754 (Tenn.Ct.App.1988) (emphasis added) ("This *intentional act* by [defendant] constituted conversion."). Clearly, then, the intentional tort of conversion is at odds with a definition of "accident" which requires that the act at issue not be deliberate. Of course, as stated earlier, we focus our efforts on analyzing the facts, in contradistinction to the particular legal theories (i.e., conversion), contained within Film House's complaint to determine whether they could potentially bear evidence of an "accident." *See St. Paul Fire & Marine Ins. Co., Inc.,* 930 S.W.2d at 552. Upon doing so, we are unable to find a single factual allegation leading us to believe that Koenig's actions in repossessing the BMW were anything but intentional. In fact, the complaint itself states as much when it claims that "[t]hese actions by the defendants [Koenig and the repossession company] were willful and wanton." *See* BLACK'S LAW DICTIONARY 1599 (6th Ed.1990) (emphasis added) (defining a "willful" action as "one done *intentionally, knowingly, and purposely,* ... as distinguished from an act done ... inadvertently.").

This Court's decision in *Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co.,* 915 F.2d 306 (7th Cir.1990), a case cited approvingly by the district court and one bearing facts similar to those at bar, wholly supports the foregoing conclusion. In *Red Ball,* a

seller and lessor of trucks, Red Ball, carried casualty insurance with Hartford Accident and Insurance ("Hartford") that obligated Hartford to indemnify and defend Red Ball in any action caused by "an accident ... which results in ... *property damage* neither expected nor intended from the standpoint of the insured." *Id.* at 307–08. After Red Ball wrongfully repossessed four trucks it had sold to an individual whom it erroneously believed to be in default on his payments, Hartford refused to defend it in the conversion action resulting therefrom. Red Ball subsequently brought suit against Hartford, seeking reimbursement for its settlement of the case, as well as attorney's fees. *Id.* at 308. The district court entered an order granting summary judgment in Hartford's favor, and we affirmed, stating that "[t]here is no doubt that Red Ball intended to repossess the trucks; that action clearly was not an accident." *Id.* at 309. We went on to conclude:

> A volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident. However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident. In this case, it is clear that Red Ball intended to repossess the [ ] trucks. A plain reading of the policy discloses that what must be "neither expected nor intended" is the *damage*; knowledge of the legal consequences is not material. Even if the mistake in Red Ball's accounting procedures triggered the chain of events that ultimately led to the repossession, the decision to take the trucks—an intentional act of Red Ball—is not an 'accident' under the terms of the insurance policy.

*Id.* at 311–12 (citations and footnotes omitted, and emphasis in original).

As Koenig's repossession of the automobile, like that in *Red Ball*, certainly was an intentional and affirmative act calculated to deprive Film House of the use and possession of the car, it cannot be construed an "accident" under the terms of the policy. Accordingly, Massachusetts Bay had no duty to defend Koenig in the Film House suit under the policy's "accident coverage" provision.

### 2. *Exclusion for Expected or Intended Injury*

In addition to arguing that it was not obligated to defend in the Film House action because Koenig's repossession of the BMW automobile was not an "accident," Massachusetts Bay further contends that the exclusionary provision in Koenig's policy, which reads as follows, brings about the same result:

> B. EXCLUSIONS
> This insurance does not apply to any of the following:
> 1. EXPECTED OR INTENDED INJURY
> "Bodily injury" or "property damage" *expected or intended from the standpoint of the "insured."* But for "garage operations" other than covered "autos" this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(R. 1, Ex. A, Garage Coverage Form, at 3 (emphasis added)). Koenig consciously acted to repossess the BMW automobile with both the intention and expectation that Film House would not be able to use it. *Thus, Film House's loss of use of the vehicle was both expected and intended from Koenig's standpoint,* and as such, it would be disingenuous to suggest that the above-quoted exclusionary language was inapplicable. Tennessee courts have enforced similar exclusionary provisions when an insurer refused to defend its insured. *See, e.g., Graves v. Liberty Mut. Fire Ins. Co.,* 745 S.W.2d 282, 284 (Tenn.Ct.App.1987) ("We believe the exclusion is applicable if bodily injury is 'intended or expected' by the insured where the insured acts with the intent or expectation that bodily injury will result."). Without elaborating any further, we conclude that the "expected or intended injury" exclusion also

justified Massachusetts Bay's refusal to defend Koenig in the Film House suit.

### 3. Asserted Coverage Under Additional Policy Sections

Having concluded that Massachusetts Bay did not have a duty to defend with respect to the intentional conversion claim, we now turn to consider whether, as Koenig asserts, the Film House complaint alleged facts that could potentially bring the case within the policy's coverage for breach of an insured contract, slander, wrongful entry, invasion of privacy, safekeeping coverage, and/or theft coverage.[8] We find each of Koenig's arguments for these potentially covered causes of action, although creative, to be scant at best.

As an initial matter, while we recognize that Tennessee is a notice pleading jurisdiction, see Walden v. Wylie, 645 S.W.2d 247, 250 (Tenn.Ct.App.1982), one wherein Film House was not necessarily required to articulate its theories of recovery by name, see Redfield v. Continental Cas. Corp., 818 F.2d 596, 605 (7th Cir.1987) (distinguishing between fact pleading and notice pleading), it is noteworthy that the Film House complaint explicitly states that "[the defendants'] actions amounted to conversion," whereas none of the causes of action which Koenig purports the complaint alleges are expressly identified. Why would Film House have specifically alluded to a claim for conversion and excluded any reference whatsoever to Koenig's breach of an insured contract, slander, wrongful entry, invasion of privacy, safekeeping coverage, and/or theft coverage, unless it chose not to seek relief for them? We need not limit ourselves to speculating on what legal theories Film House intended to allege

in its complaint. Once again, it is the facts set forth therein that one must consider in determining whether the disputed insurance policy's coverage is implicated.

Our review of the Film House complaint reveals that it alleges facts which solely and entirely relate to a claim for conversion. Koenig's attempt to use single words and phrases contained within the complaint out of context and contrive six additional causes of action is unavailing. The frailty of Koenig's position was evident when, at oral argument, its counsel asserted that Massachusetts Bay "had a duty to defend ... because it wasn't clear that there wasn't at least one word in [the Film House] complaint that had the potential for coverage." In our view, this overstates the extent to which we are to review the complaint. See English v. Virginia Surety Co., 196 Tenn. 426, 268 S.W.2d 338, 340 (1954) (emphasis added) (explaining that "[a]n insurance policy and its endorsements are to be read as a whole ...."). It would be inappropriate for us to conduct a word-by-word analysis of the complaint, patching one word from one paragraph to another word from another paragraph, because such a review might very well cause us to find meaning where none otherwise existed. The proper extent of our review simply requires us to focus attention on the facts alleged as they appear in the complaint to determine if they could even potentially be covered by the Massachusetts Bay policy. See Dempster Brothers, Inc., 388 S.W.2d at 156. That said, we turn to discuss Koenig's contention that the Film House complaint sets forth facts which could give rise to a cause of action for: (1) breach of an insured contract; (2) slander; (3) wrongful entry; (4)

---

**8.** Koenig argues that Massachusetts Bay waived any arguments against its additional assertions of policy coverage to the extent that the insurer is limited to those bases of denial (i.e., that the conversion was not an "accident" and the resulting property damage was "expected or intended") originally articulated in its denial of coverage letter, dated March 14, 1991. In so doing, Koenig relies on Sears, Roebuck & Co. v. Zurich Ins. Co., 321 F.Supp. 1350 (N.D.Ill.1971), a case in which the court held that where an insurer has unjustifiably refused to defend its insured in an action because the complaint included allegations that were expressly excluded from coverage, the insurer could not, after trial of the

underlying action, rely on the assertion of "late notice" to justify its improper refusal to defend. Koenig's reliance on Sears is misplaced, for the gist of the court's reasoning in that case was that "[w]hen an insurer has unjustifiably breached its obligation to defend, it can no longer raise other exclusionary provisions of its policy." Id. at 1352 (emphasis added). Here, it is readily apparent that Massachusetts Bay's reasons for refusing to defend Koenig were not unjustifiable. And regardless, as we conclude below, the Film House complaint, on its face, does not allege facts that could potentially give rise to any of the six additional causes of action which Koenig contends the policy covers.

invasion of privacy; (5) safekeeping coverage; and/or (6) theft coverage.

### a. *Coverage for "Insured Contracts"*

■ Koenig argues that although its policy with Massachusetts Bay expressly excludes coverage for "liability assumed under any contract or agreement," the insurer nevertheless had a duty to defend it in the Film House suit because "the lease between Koenig and Film House is an insured contract," and its policy makes clear that "this exclusion does not apply to liability for damages ... [a]ssumed in a contract or agreement that is an 'insured contract;'...." (R. 1, Ex. A, Garage Coverage Form, at 3). Whether the facts alleged state a claim for breach of an "insured contract" obviously depends on the policy's definition of that term, which reads, "[t]hat part of any contract or agreement entered into, as part of [Koenig's] garage business, by [Koenig] or any of [its] employees pertaining to the rental or lease of any 'auto.'" (*Id.* at 12.) Koenig contends that the Film House complaint's allegation stating, "it [Film House] properly and fully performed its obligations pursuant to a vehicle lease and purchase agreement so as to own said vehicle and its title but defendant Koenig failed and refused to transfer documentary title to the vehicle in question after demand," articulated a claim within the aforementioned definition of an "insured contract." We disagree. Reading this sentence in isolation, as Koenig would advise us to do, is deceptive, for the remainder of the paragraph in the complaint from which this sentence is excerpted leaves no doubt that such facts refer solely to a claim for wrongful conversion:

> This is a case involving the *tortious conduct* of the defendants in seizing the plaintiff's automobile. [Film House] alleges that it properly and fully performed its obligations pursuant to a vehicle lease and purchase agreement so as to own said vehicle and its title but defendant Koenig failed and refused to transfer documentary title to the vehicle in question after demand. The defendant unconscionably and without cause seized such vehicle in Nashville, Tennessee. *These actions amounted to a conversion by the defendants.*

(R. 1, Ex. B, Film House Complaint, at 1. (emphasis added)). Once again, the omitted text makes clear that the Film House suit was "a case involving ... *tortious conduct*," as opposed to breach of contract, arising out of Koenig's conversion of the BMW automobile.

■ Even if we were to assume, *arguendo*, that the Film House complaint somehow stated a claim for breach of contract, Massachusetts Bay still would not have had a duty to defend Koenig under the plain language of the parties' agreement. The "insured contracts" clause covers only "liability for damages ... *assumed* in ... [such] contracts...." Tennessee courts recognize that "assumed liability" requires an express "provision assuming liability"; that is, one set forth in and agreed upon as part of a lease agreement. *See Coble Systems, Inc. v. Gifford Co.*, 627 S.W.2d 359, 363 (Tenn.Ct.App. 1981) (holding lessee liable for total cost of vehicle where it executed lease agreement which contained an absolute assumption of liability provision). An insurer's exclusion of, or limitation of liability to, an insurer's "assumed liabilities" is by no means a prohibited practice. In fact, to the extent that "only those risks are covered by the policy which were contemplated by the parties when the contract was made," *Industrial Sugars, Inc. v. Standard Accident Ins. Co.*, 338 F.2d 673, 675 (7th Cir.1964), it makes sound business sense. The seven-page lease executed by and between Koenig and Film House in the instant case included no provision under which Koenig even remotely assumed liability for its refusal to transfer documentary title to the BMW automobile. Koenig's insurance policy, therefore, did not cover such liability and, in turn, Massachusetts Bay had no duty to defend against claims therefor. Moreover, as already stated, the policy's exclusion of losses "expected or intended from the standpoint of the 'insured'" precludes coverage for Koenig's *intentional* conduct.

### b. *Coverage under the "Broadened Coverage—Garages" Endorsement*

Koenig further contends that Massachusetts Bay was obligated to defend it against

claims for "personal injuries," which the parties' "Broadened Coverage—Garages" endorsement [9] defines as:

> injury, other than "bodily injury," arising out of one or more of the following offenses:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. *Wrongful entry* into, or eviction of a person from, a room, dwelling or premises that the person occupies;
> d. Oral or written publication of material that *slanders* or libels a person or organization or disparages a person's or organization's goods, products or services; or
> e. Oral or written publication of material that violates a person's *right of privacy.*

(Appellee's Br., Supp.App., Broadened Coverage–Garages, at 16 (emphasis added)). In so doing, it asserts that the Film House complaint alleges facts which could potentially constitute an action for wrongful entry, slander, and/or invasion of privacy, thereby invoking the policy's coverage. We, however, are of the opinion that Koenig is not entitled to a defense under this provision.

### 1. *Slander*

Under Tennessee law, "[t]o establish a claim for [slander] the plaintiff must prove that the defendant communicated a false and defamatory statement to the person of another, and that as a result thereof the plaintiffs suffered actual damages." [10] *Shipley v. Tennessee Farmers Mut. Ins. Co.*, 1991 WL 77540, at *5 (Tenn.Ct.App.1991) (citing *Emerson v. Garner*, 732 S.W.2d 613, 617 (Tenn.Ct.App.1987)). Koenig urges that Film House potentially pleaded these three requisite elements by alleging that Koenig:

9. The "Broadened Coverage—Garages" endorsement operated to alter Koenig's original policy retroactively to the date of that original policy.

10. When Koenig asserts that the Film House complaint makes out a claim for slander, we assume that he does not intend to mean "slander of title," which "generally refers to the publication of false and malicious statements disparaging another's interest in real or personal property that the person making the statements should recognize as likely to result in pecuniary harm

(1) falsely claimed Film House owed $6,000 on the BMW; (2) communicated false statements that it was "going to take the car one way or another . . . in the parking lot of insurer's office"; and (3) caused significant damage as a result thereof. We find Koenig's argument to be unpersuasive. Giving Koenig the benefit of the doubt and assuming the fact that Film House owed $6,000 on the leased vehicle was false, Koenig nevertheless does not suggest that this particular statement was communicated to other individuals. Rather, it tells us that another declaration—"[we are] going to take the car one way or another"—was made "in the parking lot of insurer's office," and no falsity inheres this statement. Moreover, Koenig relies on statements excerpted from a document entitled, "Memorandum of Law and Facts on Behalf of Plaintiff Film House," which explains that Film House should receive compensatory damage because of the humiliation it suffered during and following the repossession, to demonstrate that Film House suffered damages as a result of Koenig's purported slanderous conduct. This proposition is thus extracted not from the complaint, but from an extrinsic document beyond the scope of our inquiry. *See Drexel Chemical Co.*, 933 S.W.2d at 480 (explaining that "the obligation of a liability insurance company to defend an action brought against the insured by a third party is determined solely by the allegations contained in the complaint in that action"). For these reasons, Koenig's claim that Film House's complaint made out a cause of action for slander is without merit.

### 2. *Invasion of Privacy*

Koenig's assertion that the facts in the complaint potentially alleged an invasion of privacy is likewise unpersuasive. While

through the conduct of third persons with respect to the other's interest in the property." *Harmon v. Shell*, 1994 WL 148663, at *1 (Tenn. Ct.App.) (citing Restatement (Second) of Torts § 624 (1976)). In any event, because Koenig has failed to demonstrate that the complaint alleges the necessary elements of even "general" slander, what one might reasonably characterize as a "lesser-included" claim of "slander of title," we need not concern ourselves with the distinction between these two causes of action.

there exists more than one branch of liability under the "invasion of privacy" cause of action, *see Stein v. Davidson Hotel Company,* 1996 WL 230196, at \*7 (Tenn.Ct.App.1996), Koenig fails to identify the specific theory pursuant to which relief was allegedly sought in Film House's complaint (i.e., intrusion into seclusion, disclosing private information, etc.).[11] More significant, however, is the fact that Koenig once again mistakenly references documents other than the Film House complaint in its attempt to craft a claim which would otherwise fall under the Massachusetts Bay insurance policy's coverage. We hasten to point out that this information is not within the purview of our inquiry. *See Drexel Chemical Co.,* 933 S.W.2d at 480 (the duty to defend is determined solely by the factual allegations of the complaint in relation to the language of the insurance policy). Hence, we need not waste valuable judicial resources and devote effort to addressing the substantive merits of its "invasion of privacy" argument.

### 3. *Wrongful Entry*

Koenig also claims that the Film House complaint's allegation which reads, "[the] conversion was committed through a breach of the peace whereby defendants entered onto plaintiff's property," evidences a "wrongful entry," a cause of action for which the "Broadened Coverage—Garages" endorsement provides coverage. Towards this end, Koenig cites *McCall v. Owens,* 820 S.W.2d 748, 752 (Tenn.Ct.App.1991), for the proposition that "when a repossession breaches the peace as Film House alleged in its complaint, the repossessor may be liable for *trespass.*" (Appellant's Br. at 10 (emphasis added)). We believe that this argument effectively extends us an invitation to create Tennessee law, a course of action that we are in no position to follow. That is, as Koenig points out, *McCall* explicitly addressed the

tort of *trespass* in a vehicle repossession context, whereas the Massachusetts Bay policy insures against Koenig's *wrongful entry* into the premises of another. Koenig does not refer us to a single Tennessee case that sets forth the elements of a wrongful entry action, and for good reason, as none exist to our knowledge. We could, of course, equate wrongful entry with trespass, and proceed to consider Koenig's argument vis-a-vis Tennessee trespass principles. Such an analysis certainly would not prove novel to this Court, for we have previously drawn upon Missouri's and Illinois' trespass laws to interpret an insurance policy's definition of wrongful entry. *See Pipefitters Welfare Educ. Fund v. Westchester Fire,* 976 F.2d 1037 (7th Cir. 1992). But the predominant reason for having done so-because "Missouri and Illinois courts recognize that wrongful entry is substantially similar to trespass," *id.* at 1041, is inapplicable to the case at bar. Tennessee courts simply have not been called upon to compare and contrast the two causes of action, and it would be imprudent for us to do so in their stead. It is not our province as a reviewing federal appellate body to make federal law, much less state law.

### 4. *Safekeeping Coverage*

Koenig, again relying on documents other than the Film House complaint,[12] also contends that Massachusetts Bay had a duty to defend arising from the disputed policy's coverage for "any customer's 'auto' ... *left* with [Koenig's] 'garage operations' for ... *safekeeping.*" (R.1, Ex. A, Garage Coverage Form, at 1 (emphasis added).) *Limiting our review to the complaint only,* we find that its only even remotely relevant allegation reads, in pertinent part, "Film House *surrendered* the vehicle *under protest* in order to avoid damage to the vehicle." To suggest, however, that this factual averment invokes the safekeeping coverage is simply preposterous.

---

**11.** The Tennessee Supreme Court has articulated a general definition of the "invasion of privacy" tort, having stated that: " 'A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other.' " *Martin v. Senators, Inc.,* 220 Tenn. 465, 418 S.W.2d 660, 663 (1967) (quoting Restatement of Torts § 867 (1939)).

**12.** We think it somewhat ironic that Koenig so steadfastly urges us to scrutinize the Film House complaint for just "one word ... that had the potential for coverage" when, in the same breath, it repeatedly references sources outside the complaint.

To "leave" property for "safekeeping" implies the voluntary delivery of a chattel by one individual to another. *See Marshall v. United States,* 352 F.2d 1013, 1014 (9th Cir.1965) ("[T]he appellant voluntarily delivered possession and control of his briefcase to his landlady for safekeeping . . . .") (cited in *United States v. Garrett,* 371 F.2d 296, 299 (7th Cir.1966)). And as the complaint makes plain, Film House's relinquishment of the BMW automobile in the face of repossessory action was anything but voluntary. Even if we assumed that Film House did in fact "leave" the vehicle with Koenig, the question thus arises as to for whom it was to be kept safe—certainly not Film House. In short, the complaint does not create a duty to defend in Massachusetts Bay under the "safekeeping" coverage provision.

### 5. *Theft Coverage*

■ Finally, Koenig attempts to bring its wrongful conversion within the policy's language by asserting that its actions constituted a "theft," conduct for which Massachusetts Bay "will pay for 'loss' to a covered 'auto'." Koenig only very briefly describes how the conversion amounted to a theft, and in doing so, fails to recognize that the applicable coverage provision applies only "to 'autos' left with you [Koenig] for service, repair, storage, or safekeeping." Koenig does not suggest that it repossessed the BMW for service, repair or storage, and we have concluded above that Film House did not "leave" it for "safekeeping." As if that were not enough, the policy also contains an exclusion specifically stating that any loss "due to theft or conversion caused in any way by [the insured]" is not covered.

### IV. CONCLUSION

We hold that the district court's grant of summary judgment for Massachusetts Bay and against Koenig was proper and that Massachusetts Bay did not have a duty to defend Koenig in the action brought by Film House for conversion.

AFFIRMED.