ALBERT G. MORRIS, Southland Construction Company, Johnson and Johnson v. WALTER H. OSTERTAG and wife Audrey E. Ostertag.
—376 S. W. (2d) 720.

Middle Section. March 29, 1963.

Certiorari Denied by Supreme Court December 3, 1963.

Bailey, Ewing, Dale & Bailey, William C. Wilson, Nashville, for plaintiff in error.

Goodpasture, Carpenter, Woods & Courtney, Nashville, for defendant in error.

SHRIVER, J. The parties will be referred to as plaintiffs and defendants as they appeared in the Court below.

The plaintiffs Walter H. Ostertag and wife sued the defendants for damages resulting from the construction of a street adjacent to their property it being alleged that in doing the work in question the defendants encroached on and cut away large portions of plaintiffs' soil along the entire Eastern side of their lot and excavated so as to leave an almost verticle bank along the side of plaintiffs' property thus destroying the lateral support thereof and causing considerable quantities of earth on plaintiffs' land to be eroded and washed away,

all of which was done in a reckless and careless manner in total disregard of the rights of plaintiffs.

The case was tried before Judge Byrd Douglas and a jury in the Second Circuit Court of Davidson County and resulted in a verdict and judgment in favor of the plaintiffs against all defendants for $3,200.00 damages.

Motions for a new trial were overruled and the cause appealed in error to this Court by all defendants and assignments of error have been filed.

—THE FACTS—

The declaration avers and there is material evidence in the record to support the following facts:

The property involved in this litigation is located in the Whispering Hills Subdivision in Davidson County, which contains approximately 350 lots as shown by the plat made Exhibit 10 to the testimony of Mr. Johnson. The subdivision was developed by the defendant, Southland Construction Company or Evergreen Land Company, under the supervision of Albert Morris, president of Southland Construction Company and part owner of Evergreen.

The property was sold by one of these corporations to the Hallmark Construction Company which, in turn, sold it to the plaintiffs on January 16, 1958 for $13,700.00.

After the plaintiffs purchased their home Albert Morris purchased undeveloped land to the rear and South of their property, and the road in question, Cherrywood Drive, was built in order to open up and develop this land as a subdivision for the gain and profit of Mr. Morris and the Southland Construction Company of which he was President.

When plaintiffs purchased their home the lot was fairly level, especially along the Eastern boundary, with a walkway running out to the East property line. And the roadway adjacent to the East boundary line was practically level with the Eastern part of their lot which sloped gradually to the North towards Southcrest Drive where there was a rather steep slope making the only practical means of ingress and egress to plaintiffs' property by way of undeveloped Cherrywood Drive, which was used by the plaintiffs and their neighbor to the East of them for access to their respective garages. Cherrywood Drive ended at the undeveloped property South of plaintiffs' lot subsequently purchased by defendant, Southland Construction Company.

After purchasing their home plaintiffs spent considerable time, money and effort in establishing a lawn, planting shade trees, flowers and shrubs which they planted all along the East boundary of their property. However, during the latter part of January 1959 when Mr. Ostertag returned from work one day he found the defendants Johnson and Johnson with bulldozers excavating Cherrywood Drive. They had lowered the grade all along the 251 feet of his East property line and in doing this work, had left a bank some 6 feet in height at the front but of less height in the rear. His walkway had been cut off and the overflow field to his septic tank had been cut into. And, in pursuing this work, they encroached as much as nine feet on plaintiffs lot at one point and removed the soil, flowers and shrubs all along the East side thereof. Thereafter, for two months or more, plaintiffs were unable to drive their car up this road to their driveway and garage.

The record shows that Mr. Morris went to the scene on several occasions while the work was going on, and gave some instructions in regard thereto. The Secretary and Treasurer of Southland Construction Company, Mr. Pailet, likewise made trips to the site during the period of construction.

Mr. Ostertag called defendant Morris repeatedly during some six months trying to get the condition corrected and trying to work out an adjustment with him but to no avail.

Plaintiff, Walter Ostertag, testified that Mr. Morris promised to take care of the damage saying to him, ''Yes, we'll take care of it, don't worry, boy, we are going to take care of you. You don't have anything to worry about.''

Subsequently, Mr. Morris discovered that the overflow field to the septic tank had been cut into and called this to the plaintiffs' attention and then declined to go any further towards the repair of the damage unless plaintiffs would sign a release relieving defendants of any damages as the result of the septic tank. At that time he is quoted as saying, ''It's going to cost too much money to fix this thing now. The only way I am going to do it for you is for you to sign a release paper.''

It appears that the contract by which Johnson and Johnson undertook the improvement of Cherrywood Drive provided that the owner of the property was to furnish all engineering data in connection with the construction of the road. The defendants had caused stakes to be put up along the margin of plaintiffs' property next to Cherrywood Drive, but in spite of this, Mr. Johnson in his testimony admitted that he cut over into the plaintiffs'

property beyond the street line and that he knew at the time that he was doing so. He said, however, that the reason he did this was to conform to the specifications of the Davidson County Highway Department as to the proper slope along the embankment. It is also shown that the defendant, Morris, made up, or caused to be made up, the plans for the road and kept a copy of same in his files.

It was testified by Mr. Johnson that his machinery did cut the plaintiffs' shrubs down and that all of this work was done without saying anything to the plaintiffs. He also testified that Mr. Morris came to the job site occasionally to see how the work was progressing and caused them to put gravel on the roadway so as to enable the plaintiffs to get to their driveway.

He also testified that the dirt taken from plaintiffs' property was used by the defendants to fill in low places on defendant Morris' lots and that about ten loads of the plaintiffs' soil was hauled away and so used.

There is testimony to the effect that Cherrywood Drive was not acceptable to the County unless it was built in accordance with the County's specifications, and that the only purpose of the road was to serve the subdivision which the defendant Morris intended to open up to the rear of plaintiffs' property, even though there was another road giving access to that property.

Mr. Morris said that the road was constructed as he understood it had to be from his experience with subdivisions, stating that he was present on the job when the work in the building of this road was begun.

## QUESTIONS FOR DETERMINATION

Counsel for the defendants in their well reasoned and carefully prepared briefs and arguments assert that there are two principal questions for determination:

1. Where a person purchases a lot in a recorded subdivision and such lot is described in the deed of conveyance as being bounded by a street and the deed refers to this recorded plan which shows the street on which the lot abuts, can the owner and developer of the subdivision be held liable when he subsequently constructs the street in question because of damages alleged to have resulted solely from the construction of such street which is built in accordance with good engineering practices and according to specifications and regulations of the municipalities having jurisdiction over such highway construction?

2. In the absence of the use of explosives, or other inherently hazardous operations, can a property owner be held responsible in damages for injuries inflicted solely by an independent contractor who has performed work for the property owner?

It is insisted by the defendants that both of these questions must be answered in the negative, or favorably to the defendants.

It may be well, at the out-set, to point out that under Section 6-1012 T.C.A. an owner of real estate may recover from any municipality such damage as is suffered to his property by any change in the natural or established grade of any highway, street or alley, or by the raising or lowering of such grade, or other acts done for the purpose of improving or repairing such ways. And, under our statute, this relief has been accorded in the

case of improvements of public roads and highways so that recovery may be had against counties where a change in grade has interfered with the means of ingress and egress, or otherwise resulted in damage to the owner.

In City of Knoxville v. Hunt, 156 Tenn. 7, 299 S. W. 789, it was said that an abutting property owner is entitled to damages for the cutting off of ingress or egress by change of grade of existing highway whether the change be made from the natural grade or an established grade. And in Acker v. City of Knoxville, 117 Tenn. 224, 96 S. W. 973, it was said that the measure of damages is the difference between the market value of one's abutting property just before the grading and just afterwards as for a permanent injury to the land. To like effect in City of Knoxville v. Phillips, 162 Tenn. 328, 36 S. W. (2d) 434.

But in City of Knoxville v. Hunt, supra, it was said that only the municipality and not a developer is liable under this section. This points up the fact that the remedy against a municipality or county for such damages is statutory and the benefits of the statute are not extended to cover damages sustained when a subdivision developer performs or causes the work to be performed.

On the other hand, a private individual or corporation is liable in damages for trespass and for interference with the lateral support of one's land, which are the grounds on which the judgment in this case must rest if at all.

There is material and substantial evidence in this record to support the charges in plaintiffs' declaration that the defendants not only trespassed upon plaintiffs' land by cutting off a portion of the embankment along the East boundary of their lot, extending some nine feet

at the North end of the property and tapering back in a pie shape to zero at the rear thereof, but, in addition thereto, the excavation destroyed a substantial amount of the lateral support of plaintiffs' land along the boundary of Cherrywood Drive.

In 1 R. C. L. "Adjoining Landowners" Section 18, page 383, it is said, that it is now well settled that the owner of land is entitled to have it supported and protected in its natural condition by the land of his adjoining proprietor, and that if such adjoining owner remove such natural support, whereby the soil of the former is disturbed or falls away, he is legally liable for all damages so occasioned. It is further said that there are few principles of the law that can be traced to an earlier or more constant recognition through a long series of uniform and consistent decisions than this, and that the liability is not dependent in any wise on the degree of skill or care that is exercised in making the excavation, but is absolute, and that the fact that the falling of the soil on the adjoining land is due to the action of the elements does not constitute a defense.

At Section 25, page 388, it is further said that, for any injury to his soil resulting from the removal of the natural support to which it is entitled, by means of excavation on an adjoining tract, the owner has a legal remedy in an action at law against the party by whom the work has been done and, since the action is for a disturbance of possession, trespass is the proper form in which to seek redress.

In 1 Am. Jur. "Lateral Support" Section 21, it is said that the principle above stated may be regarded as a settled doctrine of the common law which was probably

borrowed from the civil law; at least, the civil law recognized the right and protected it by specific regulations. And at Section 36, it is said that the general rule is that an action may be maintained against anyone who causes the injury, whether he is the owner of the adjoining land or not, and that this follows from the fact that the right of a landowner to have his soil sustained by that adjacent to it is an absolute right.

The text states further:

"Not only a person who makes an excavation, but any person who directs the excavation to be made or under whose authority it is made, is liable for the resulting injury to adjoining land, on the principle that all who participate in a tort are answerable for damages resulting therefrom." 1 Am. Jur. Sec. 36, p. 526, 68 L. R. A. 694.

Counsel for plaintiffs refers to the annotation on this question in 36 A. L. R. (2d), particularly the case of Levi v. Schwartz, 201 Md. 575, 95 A. (2d) 322, 36 A. L. R. (2d) 1241, as being in point and dealing with the question at hand.

However, counsel for defendants argue that Levi v. Schwartz, presents a situation where the subdivision was laid out after plaintiff had acquired the property instead of a situation such as exists in the case at bar where the plaintiffs purchased their property with reference to a recorded plan of the subdivision and, therefore, Levi v. Schwartz is not in point here.

We think a careful examination of Levi v. Schwartz reveals that it is in point. The opinion points out that suit was brought against the developer of a subdivision

and the contractor employed by him to excavate a street adjacent to the lot in question, just as in the case at bar. The lot involved was part of a tract containing 18 acres known as Anchorage Subdivision and was completely surrounded by other land in the tract and was improved by a house built thereon by the owner for the plaintiff Mrs. Schwartz.

Mr. Levi, the developer, purchased all of the tract except the lot in question, and Mrs. Schwartz, the owner, joined in the deed to waive her rights to the use of the streets and the right-of-way in the tract, subject to the proviso that Levi would lay out along the North line of the lot a street known as Bradhurst Road, not less than 40 feet wide, the South side of the street to coincide with the North line of her lot. The engineer of the developer discussed the plan with the City Planning Commission and adopted plans approved by the Commission calling for an excavation adjacent the lot of Mrs. Schwartz for the bed of Bradhurst Road. The developer then engaged Earheart and May, Inc. to do the excavating and stakes were placed by the engineer on the North side of the road for the guidance of the contractor, and the excavation proceeded. The developer gave the contractor permission to take some of the soil out of Alhambra Avenue near the alley and the plaintiff claimed that he removed some soil from the Southwest corner of her lot. Plaintiff instituted suit alleging that the defendants had unlawfully entered her lot and had removed soil which constituted the support of its front, sides and rear so that the property had become subject to washing and other damages from the elements.

It was pointed out in the opinion that it could be reasonably inferred that Mrs. Schwartz and Levi under-

stood that the grades for the streets had to be established by the City Planning Commission, but it could also be reasonably inferred that Levi would be liable for loss of lateral support to Mrs. Schwartz' land for any unlawful invasion of it.

The opinion goes on to point out that it is an established principle of law that every owner of land has the right to lateral support from the adjoining soil and if a landowner removes the soil from his own land so near the land of his neighbor that his neighbor's soil will crumble away under its own weight he is liable for damages so occasioned. It was said that the right of support to land from the adjoining soil is a right of property and not an easement and, if that support is withdrawn and injury ensues, he can maintain an action of damages without proving negligence or want of skill on the part of the adjoining owner.

In the headnotes to Levi v. Schwartz, as annotated in 36 A. L. R. 2nd, 1242, we find the following statement which we approve:

"Liability of a subdivision developer to the owner of a lot in the subdivision for the loss of lateral support due to excavations made for the establishment of adjoining streets, is not precluded on the grounds that the deed to the developer, in which the lot owner joined, required construction of the streets, and that the developer had to comply with the street grades established by the city planning commission." See Am. Jur. Adjoining Landowner, Secs. 25-32.

But it is said that defendants Johnson and Johnson were independent contractors and that, therefore, there is no liability on the part of the other defendants, for

their acts. On the other hand, the contractors insist that they only carried out the instructions given them by the other defendants who employed them and, therefore, they are not liable, although it seems to be admitted that, insofar as they knowingly trespassed upon the property of the plaintiffs by cutting off the banks beyond the street line, there is liability provided damage resulted. But it is argued that they were doing this for the benefit of the landowner and that by rounding off the top of the excavation instead of leaving it perpendicular they conferred a benefit and not an injury.

It is argued by plaintiffs, however, that rounding off the top of the excavations did not eliminate the damage and that a retaining wall should have been built the entire distance of the East lot line. And, although Mr. Morris promised to repair the damage it was never done, and, after waiting for many months, plaintiffs brought suit.

In Carroll Blake Construction Company v. Boyle, 140 Tenn. 166, 203 S. W. 945, it was held,

"Owner and his lessee, excavating alongside a party wall for a proposed building, were [absolutely] bound to prevent injury to property of other owner of the wall, and could not claim exemption from liability upon the ground that the construction company was an independent contractor for whose negligence they were not liable."

We think the correct rule with respect to independent contractors and their liability in a case like this, as well as the liability of the employers of the contractors, is well stated in 1 Am. Jur. "Adjoining Landowners" Section 37, page 527, as follows:

"One who causes work to be done is not liable, ordinarily, for injuries that result from carelessness in its performance by the employees of an independent contractor to whom he has left the work without reserving to himself any control over the execution of it. But this principle has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for if reasonable care were omitted in the course of its performance. In such a case, a person causing the work to be done will be liable even though the negligence is that of an employee of an independent contractor."

■ There is evidence from which the jury may have concluded that the owners, Mr. Morris and the officials of his company, were present and, to some extent, supervised the operation of the contractors who excavated and built the road. Furthermore, there is evidence to support the conclusion that the contractors were negligent in encroaching on the land of the plaintiffs and in hauling the dirt away and in destroying the shrubs and otherwise trespassing.

It is to be observed that the action of these defendants in trespassing upon the land of plaintiffs and in destroying for a considerable period of time the means of access to their driveway and garage, and in cutting off the walkway, etc., were all done without any consultation whatever with the plaintiffs or any notice to them which might have enabled them to prepare for and, perhaps, mitigate the inconvenience and damage.

It is argued that the verdict is so excessive as to indicate passion, prejudice or caprice on the part of the jury. We cannot agree with this contention, it appears to us that, when all the elements of damage are taken into consideration, the judgment is reasonable and fairly well supported by the evidence.

If we could apportion the judgment we would do so somewhat as did the jury in its original report to the Court awarding $500.00 damages against the contractors and $2,750.00, against the other defendants. However, such procedure is not sanctioned in Tennessee and the trial Judge properly required the jury to revise their verdict and fix a single sum.

It is to be borne in mind that in dealing with a jury verdict and judgment approved by the Trial Court, we do not weigh the evidence but indulge all reasonable conclusions and inferences favorably to the verdict. Tallent v. Fox, 24 Tenn. App. 96, 141 S. W. (2d) 485 and many cases.

It results that all the assignments of error are overruled and the judgment of the Trial Court is affirmed.

Affirmed.

Humphreys and Chattin, JJ., concur.