IN THE COURT OF APPEALS OF TENNESSEE
AT  NASHVILLE
February 13, 2003 Session

**XI PROPERTIES, INC.,
LARRY W. NICHOLS, and
JIMMY C. STOUT v. RACETRAC PETROLEUM INC.,**

**Appeal from the Circuit Court of Putnam County
No. 00N00233   John Maddux, Circuit Court**

_____

**No. M2001-00977-COA-R3-CV - Filed August 27, 2003**

Plaintiffs, XI Properties Inc. et al., purchased land from the defendant, RaceTrac, adjacent to RaceTrac Petroleum in 1992.  Seven years later, XI Properties, while attempting to develop the property, learned RaceTrac had inadvertently conveyed to them portions of RaceTrac parking, curbs and light posts.  Plaintiffs proposed to remove the unnatural slope created by the parking lot, but defendants were concerned about their rights and responsibilities.  Plaintiffs filed a declaratory judgment.  Defendants filed a Motion for Summary Judgment. We reverse the trial court=s grant of summary judgment to XI Properties as to adverse possession by RaceTrac.  We  remand the issue to the trial court to determine if Racetrac can establish possession of the property.  Further we affirm the finding that XI Properties owes no duty to RaceTrac for lateral support, so long as it does not act negligently.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part, and Remanded**

MARIETTA M. SHIPLEY, SP. J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J. joined.

Todd Rose, Paris, Tennessee and John Acuff of Cookeville, Tennessee, for the appellant, RaceTrac Petroleum, Inc.

Peter H. Curry, Nashville, Tennessee for the appellees, XI Properties, Larry W. Nichols, and Jimmy Stout.

## OPINION

### I. Standard of Review

The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Assocs.*, 15 S.W.3d 83 (Tenn.2000): The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. See *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, see *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. See *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993).

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *Byrd*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. See *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn .1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

### II. Background[1]

In 1992 RaceTrac sold 3.221 acres of land adjoining their gas station to XI Properties. The contract provided an inspection period of 45 days. The deed and contract provided the sale was "AS IS, WITH ALL FAULTS, in its present condition, without guaranties or warranties, express or implied@ ( Exhibits 1 and 2; R at vol. III, 7-12- and 13-17, respectively). The parcel conveyed to XI Properties was unimproved, save for the improvements that were inadvertently conveyed by RaceTrac, consisting of paved parking, light posts, and a sloped embankment providing support to the remainder of RaceTrac's improvements. All improvements were made before 1992. When XI Properties decided to develop the 3.221 acre tract, they discovered the improvements were on their property. They determined the best use of their property was to remove the soil from RaceTrac's property and build a retaining wall to support RaceTrac's property. They met opposition when they contacted RaceTrac as to how the costs should be handled. XI Properties filed a declaratory judgment action to determine the rights of the landowners.

---

1In this case there is no record, but there is a Statement of Undisputed Facts, as well as the transcript of the Court=s Findings, which is helpful.

## III. Legal Proceedings

XI Properties filed a declaratory judgment action on July 12, 2000. On October 31, 2000 RaceTrac filed a motion for summary judgment; on December 20, 2000, XI Properties filed a cross motion for summary judgment. On January 11, 2001 the trial court heard argument, made findings on that day and issued an order on February 28, 2001. The trial court granted XI Properties motion for summary judgment and denied RaceTrac's motion for summary judgment. RaceTrac appealed on March 23, 2001 from the trial court's judgment.

## IV. Legal Issues

A.) Whether XI Properties', et al., actions are barred by RaceTrac's adverse possession of the property pursuant to T.C.A. ' 28-2-102.

B.) Whether XI Properties, Inc. et al. owes a duty to provide lateral support to RaceTrac's property.

## ADVERSE POSSESSION

RaceTrac asserts in this dispute that it has possessed adversely the property in question for seven years, even though the deed clearly conveyed the property to XI Properties. RaceTrac further asserts that if its possession of the property is adverse, XI Properties may be barred from further development on this property. One can obtain common law title to any property without color of title if one adversely possesses property for 20 years. See *Catlett v. Whaley,* 731 S.W.2d 544, 546 (Tenn. Ct. App 1987) (Citing *Tidwell v. Van Deventer,* 686 S.W.2d 899 (Tenn. Ct. App. 1984)); *Smith v. Adkison,* 622 S.W.2d 545 (Tenn. Ct. App. 1981)) ; *Moore v. Brannan,* 42 Tenn. App. 542, 565, 304 S.W. 2d 660, 670 (1957). In this case, the court found that RaceTrac had possessed the property for over seven years, prior to this lawsuit. Although RaceTrac no longer has color of title, RaceTrac may possibly rely on the defensive statute, Tennessee Code Annotated § 28-2-103 as a defense to an action to dispossess them. The statute states as follows:

> (a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements, or hereditaments but within seven (7) years after the right of action accrued.
> (b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or

hereditaments is duly recorded in the county in which the lands are located.

### 1. Mistaken Conveyance - Is Grantor a Tenant of Grantee?

The court found that RaceTrac had met the minimum seven year possessory period, but that this type of possession was different than that contemplated by the adverse possession statutes. The trial judge found that this particular type of possession was unusual, as the grantor continued to possess a portion of the conveyed property due to a mistake concerning the boundary. The trial judge, likely following *Mahunda v. Thomas*, 402 S.W.2d, 485 (Tenn. Ct. App. 1965) (*cert denied*) made findings in his order that

> Y the Grantor should be considered, as a matter of law, as being merely a tenant of the property in question Y. and what the law basically says is that you hold that property merely as tenant. And if anytime in the future you have gained the title to that property, that property right automatically reverts to the Grantee. It is presumed to not be adverse.

The trial court then went on to apply the concept of Estoppel by Deed, as more applicable.

It is true that *Mahunda* does quote from 3 Am. Jur. 2d *Adverse Possession* ' 163 (sic) (See § 193), which discusses this dilemma and is the general rule found in most jurisdictions:

> Ordinarily where a grantor continues in possession of land after the execution and delivery of the deed, his possession will be either that of tenant or trustee of the grantee; he will be regarded as holding the premises in subserviency to the grantee. Thus the occupation of land by the grantor, after conveyance made , is presumed to be under, and in subordination to, the legal title held by his grantee, for he is ordinarily estopped by his deed from claiming that his holding is adverse.

The defendants, RaceTrac, urge the court to make an exception to this general rule pursuant to the cases cited in 39 A.L.R. 2d ' 9 (1955).[2] RaceTrac encouraged the court to

---

[2] The summary of the article found at p. 22 states as follows:

> It is well settled that a grantor continuing in possession of property conveyed after the execution and delivery of the deed will ordinarily be presumed to be holding the property in subordination to the rights of his grantee, rather than adversely thereto. While a few of the earlier decisions have announced the view that this presumption is conclusive, and that such a grantor cannot in any circumstances hold adversely to the title which he has himself conveyed, at least where the

adopt the exception to assert that the mistaken conveyance did not automatically make RaceTrac a permissive tenant of XI Properties, but allowed RaceTrac to assert it had adversely possessed the property in question. The defendants on the other hand, assert that the cases cited were fact driven and the exception should not be adopted, relying on the citation to 3 Am. Jur. 2d *Adverse Possession* ' 163 (sic) (See § 193), as found in *Mahunda.* What, however, is not stated in *Mahunda,* is the last sentence of 3 Am. Jur. 2d *Adverse Possession* ' 193.

The case cited by the Am. Jur. article is *Stockwell v. Gibbons,* 58 Wash. 2d 391, 363 P.2d 111 (1961), also cited by RaceTrac as its primary case. In *Stockwell*, the Supreme Court found that although one would normally follow the general rule as stated in the paragraph cited in *Mahunda,* a grantor's mistaken belief that a portion of the property was not conveyed undermines the assumption of permission that supports the general rule. The *Stockwell* court cited 39 A.L.R.2d 353 for a line of cases asserting an exception to the general rule where the property was mistakenly conveyed. Section 9 cites cases deviating from the general rule by including the following cases from these jurisdictions for the same proposition. *Hall F. Robins,* 212 Ark. 803, 207 S.W.2d 746 (1948), *Moore v. McDonald,* 298 S.W.2d 662, Tex. Civ. App. (1977), *Salter v. Cobb* 88So.2d 845 (Ala. 1956), *Colley v. Carpenter,* 362 N.E. 2d 771 Ind. App. (1977), *Waote v. Pearson* 88 So.2d 43, La. App. 1956.

After much consideration, the court finds that the exception to the general rule should be adopted in Tennessee as the more reasoned rule; i.e., a grantor who mistakenly conveys a portion of property by deed may assert adverse possession of that property, so long as he can prove that the possession was at least seven years in duration and "must be of such a character as to leave no doubt of claim of ownership by adverse possession and to give notice to the public of the possession and the claim." *Blankenship v. Blankenship*, 658 S.W.2d 125, 127 (Tenn. Ct. App.1983).

Actually in a slightly different context, this rule has existed in Tennessee for a very long time. We recently made, in *Michael v. Jakes,* 2002 WL 1484448 (Tenn. Ct. App., July 2002 Perm. App., Dec. 2002), a thorough study of adverse possession. The actual dispute in the *Michael* case concerned the use of a driveway between two neighbors. Although Mr. Michael asserted that he had used the driveway well over seven years, the survey clearly showed that the property belonged to Mr. Jakes. In this case, Mr. Michael had used the driveway for eleven years from the time of his purchase of the property. He attempted to tack his possession period to his predecessor in title to establish his 20 year prescriptive

---

conveyance is by full warranty deed, most of the courts have taken the view that the permissive possession will be presumed to continue only until the grantor=s intention to hold in his own interest and against the title conveyed is brought to the grantee=s notice, either actually by a declaration to that effect, or constructively by acts so unequivocally hostile to the grantee=s title as to clearly evidence the grantor=s adverse claim, but that where there is brought to the grantee=s attention such a showing of an equivocally hostile claim by the grantor, the possession , if continued for the statutory period will ripen into title.

period to establish title to the property. Mr. Jakes argued that neither Mr. Michael nor his predecessor in title had enclosed the driveway or made an an outward possession of the property. After addressing these issues, we reversed the trial court=s decision that summary judgment should be granted. Mr. Michael had created a dispute of fact that he had possession of the land, despite no enclosure, and that his predecessors had possessed the land. The issue was exactly what portion of the land Mr. Michael or his predecessors had possessed.

In *Michael,* we also discussed a mistaken deed of property. We cited a number of cases that affirmed that a mistake as to the true boundary does not make the possession other than adverse, *Peoples v. Hagaman,* 31 Tenn.App. 398, 403, 215 S.W.2d 827, 829 (1948); *Liberto v. Steele,*221 S.W.2d 701 (Tenn. 1949); *Lemm v. Adams,* 955 S.W.2d at 73 Tenn. App. (1997),( Perm App. Den. 1997);*Cross v. McCurry*, 859 S.W.2d 349, 352 (Tenn. Ct. App, 1993). In the *Lemm* case , Ms. Lemm purchased her sisters= interest in property adjacent to Mr. Adams= property. The Adams property had an old fence on the property and upon a survey of both properties, the parties learned that the fence line was on Ms. Lemm=s property. The court found that Adams had been in possession of the disputed property for over seven years and granted summary judgment to him. The court followed the decision in *Erck v. Church,* 87 Tenn. 575, 11 S.W. 794 (1889) which states the rule that Awhere a purchaser of land accidentally or by mistake encloses a contiguous strip, believing he is placing the fence on the boundary, and holds the enclosed strip for (seven) years, his possession is adverse and will avail against the true owner." Citing *Liberto,* "A the actual intent to adversely possess the property of another need not be shown; it is sufficient that the possession was due to ignorance or mistake as to the true location of the boundary line." *Lemm* at p.72. Thus it appears, pursuant to long held rules, an owner in possession of property, longer than seven years, may assert a claim of adverse possession, so long as it was truly adverse, exclusive, continuous, open, and actual, even if the grant of land was by mistake or ignorance. Therefore, if it is even necessary to state an exception to the general rule as set out in *Mahunda,* there is ample precedent and Tennessee hereby adopts the exception.

### 2. If a Grantor is not a Tenant of a Grantee, may a Grantor rely on Tennessee Code Annotated § 28-2-103 to assert possession?

If this case is not governed purely by *Mahunda,* we can go back again to Tennessee Code Annotated 28-2-103, the seven year statute of limitations defense. As stated above, this statute prevents the grantee from recapturing the property possessed if no action was begun before the running of the seven years. *Michael* reviewed the cases on this issue and determined AA party adversely possessing land for the requisite seven years obtains a possessory interest in the real property so possessed. This possessory right, or defensive title as it is sometimes called, continues as long as the actual possession is maintained." *City Nat=l Bank and Trust Co., of Miami, Fla, v. The City of Knoxville,* 158 Tenn. 143, 146, 11 S.W.2d 853, 854 (1928) *Michael,* at p. 12.

Essentially what the statute allows is that if a party can show exactly what portion of the conveyed property he possessed, the grantee cannot recapture possession of the property, which the grantor has possessed, even though the grantor has no color of title. In order for the grantor to get title to the possessed property, he would have to possess it for 20 years, the prescriptive period. In this case RaceTrac will have to prove exactly what portion of the property it possessed, and if it did so adversely.

### 3. Summary Judgment

We find in this case, contrary to the trial court=s decision, that summary judgment on this issue should not be granted. RaceTrac has created issues of material fact in regard to whether the adverse possession was adverse. Furthermore, there has been no hearing nor discovery as to whether the possession was adverse or exactly what portion of the property RaceTrac possessed. Pursuant to Tennessee Code Annotated 28-2-103 RaceTrac has a possible defense to XI Properties developing the property which was originally deeded to them. RaceTrac=s claim of adverse possession is remanded for the trial court to determine if the elements of adverse possession have been met, and if so, exactly what portion XI has possessed. We reverse the lower court's finding on this issue, and remand the case back for further hearing.

## LATERAL SUPPORT

This case began as a declaratory judgment action. Therefore, if the defendant RaceTrac does not prevail on the adverse possession issue, we will make a determination as to whether XI Properties owes a duty of lateral support to RaceTrac.

The trial judge found in this case that these parties had lived side by side for nine years without incident. It was not until XI Properties determined to develop their property that they discovered that they owned more land. Both parties had adequate time to obtain a survey and inspect the property. Both parties admitted there was a mutual mistake deeding the slope at one end of the property containing part of the parking lot and lights common to XI Properties. The parties were unable to resolve this issue and asked the court for a declaratory judgment adjudicating the rights of the parties.

It is a well-established principle of law that . . .

> every owner of land has the right to naturally necessary lateral support from the adjoining soil, and if a landowner removes the soil from his own land so near the land of his neighbor that his neighbor=s soil will crumble under its own weight, he is liable for damages naturally resulting therefrom, including damage to structures on the subsiding land, without the necessity of showing negligence or want of skill on the part of the adjoining owner in making the excavation. *Williams v. Southern Railway Company*; 396 S.W.2d 98 (1965); *Puckett v. Sullivan;* 190 Cal. App 2d 489, 12 Cal. Rptr. 55, 87 A.L. R. 2d 740; *Levi v. Schwartz*; 201 Md. 575. 95 A. 2d 322, 36 A.L. R. 2d 1241; *Prete*

7

*v. Cray;* 49 R.I. 209, 141 A.609, 59 A.L. R. 1241; Ann. 50 A.L. R. 1252; *Morris v. Ostertag*; 52 Tenn. App. 561, 376 S.W.2d 720 (1963); Restatement Torts '' 817, 819. An adjoining landowner who by making an excavation takes away the lateral support of his neighbor's ground so as to cause it of its own weight to fall, slide or break away, is liable for the injury regardless of how carefully he excavated. Consequently, the injured landowner may maintain an action for damages without proving negligence on the part of the adjoining owner.

This summary is also repeated in the Restatement of Torts '' 817 and 818. Thus the law is clear, that there is absolute liability for an adjoining landowner if he excavates into the naturally necessary support of the adjoining property, whether he does it carefully without any negligence on his part or not. Whether the final falling of soil onto the adjoining property is a result of erosion is irrelevant, as in *Williams, v. Southern Railway Company,* 396 S.W.2d 98 (1965).

The *Williams* case, as well as the *Morris* cases, are the primary Tennessee cases which discuss this rule. In the *Morris* case, a contractor for the subdivision in which Mr. Morris lived, cut into his slope and destroyed some of his trees and shrubs. Although the contractor was attempting to comply with county regulations, he was found responsible, not only for trespass, but of destroying a substantial amount of the lateral support of the plaintiff's land. In *Williams*, a homeowner owned a house near a railroad track where the Southern Railway had made a cut in 1905. After a heavy rain the house fell away to a depth of approximately one foot. The Railway was responsible, as it had made a cut sixty years prior into the naturally necessary support to the adjoining property. In that case the home owner did not have to prove negligence in order to maintain suit against Southern Railway.

Clearly the fill which forms the slope upward to the RaceTrac property is not naturally necessary support. The removal of that artificial slope must be done in a manner that is not negligent. If the excavation goes to the naturally necessary support, there is, of course, strict liability.

The plaintiff, XI Properties, cited a number of out of state cases to support its position. The trial judge found there were no Tennessee cases on point as to whether the removal of the "fill dirt and the improvements were placed on the property above the natural lay of the land." The trial judge, in his final judgment, cited the Minnesota case of *Sime v. Jensen*, 213 Minn. 476, 7 N.W.2d 325 (1942):

That there is no right of lateral support for land where the natural condition of the land has been altered through mans' activities so as to create need for lateral support, where none existed in the state of nature, as where an owner raises his land above his neighbor's land by filling.

and a case from Texas, *Carrion v. Singley*, 614, S.W.2d 916 (1981):

8

The right of lateral support is the right that the soil in its natural state has to support from land adjoining it. The right applies only to land in its natural state. The right of an adjoining property owner to lateral support exists only so far as as to require support for his land in its natural state from his neighbor's land in its natural state.

The defendants, RaceTrac, in their brief urge the court to adopt the definition of natural state as being the state that property is in at the time of its subdivision. RaceTrac makes a compelling argument that this ancient principle is simply unworkable in the present time of single developer improving property and substantially altering the natural state of the land. It is true that such a rule might have a more practical effect on the rights of land owners than the principle applicable in this case. However, the cases cited by the defendant, notably, *Durante v. Alba*, 266 Pa. 444, 109 A 796 (Pa. Sup Ct. 1920), *Bradley v. Valicenti*; 185 Pa. Super. 403 , a38 A.2d 238 (Sup. Ct. 1958), *Albert v. Wright v. Thomas & Curley*; 410 Pa. 383, 189 A.2d 753 (Sup. Ct. 1963) *Henry v. Koch*, 1882 WL 8259 (Ct. App. Ky. 1882) are very specific and fact based and create no real precedent for RaceTrac=s theory to adopt a new definition. In *Bradley* and *Albert*, the court gave no relief to the neighbor landowners for excavations that went into the Afill@ that was placed on the property. In *Henry,* there was a common wall, which could not be altered without damage to the other property. In *Durante*, an owner with a building erected directly next to property he conveyed to the defendant, suffered damage when the new owner excavated below the foundation line of the building. The court found that the defendant took it Aburdened or benefited by all palpable and manifest qualities annexed thereto, or which appear in his chain of title.@ The court found that under either rule, the general rule or a slightly modified one, the plaintiff would recover as the excavation was negligent. We find that *Durante* is hardly a precedent setting case, compared to the line of cases in Tennessee and across the country as well as the Restatement of Torts, which supports the general rule.

Although this ruling may be a harsh result and hardly a practical one, we decline to stray from the general rule.

Thus, we affirm the ruling of the trial court that XI Properties owes no duty to RaceTrac in removing fill from their property, so long as it does not do so negligently and it does not excavate into the natural support of the land.

If RaceTrac does not prevail on the adverse possession issue, the declaratory judgment should guide the parties in the excavation of the slope. Much of this legal wrangling could have been avoided if the parties had worked with each other from the outset. The original mistake was one both made. XI Properties now has the responsibility to excavate in a non-negligent way. RaceTrac may have to build a protective temporary or permanent retaining wall to prevent any of its property from falling away. It might behoove these parties to work together to have a seamless boundary between the two properties.

## CONCLUSION

We reverse the trial courts conclusion that summary judgment should be granted to XI Properties. We remand the case back to the trial court for a determination as to whether

RaceTrac has a defense to the lawsuit through its assertion of adverse possession. We affirm the trial court that in the event RaceTrac cannot establish adverse possession, XI Properties owes no duty of lateral support to RaceTrac in its excavation of the fill on its property, so long as it does so in a non-negligent way.

 

_____
JUDGE MARIETTA SHIPLEY